SHREDDED WHEAT CO. v. WILLIAMS BISCUIT CO. et al.

(Circuit Court, N. D. Illinois, E. D.    March 8, 1911.)

No. 29,623.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR MAKING SHREDDED WHEAT.

The Perky & Ford patent, No. 502,378, for a machine for the preparation of cereals for food, the novel feature of which is the combination with a pair of compressing rolls, one or both of which are grooved, of a comb-like scraper, the teeth of which are arranged to fit said grooves and the spaces between the teeth to fit the cylindrical faces of the rolls between the grooves, discloses a true combination and invention. Claims 1 and 2 also *held* infringed.

2. PATENTS (§ 290*)—SUIT FOR INFRINGEMENT—PARTIES.

Where one man conceived, built up, patented in part, and managed the business of a corporation, he may properly be joined with it in a suit for infringement of a patent in the conduct of such business.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 470–472; Dec. Dig. § 290.*]

In Equity. Suit by the Shredded Wheat Company against the Williams Biscuit Company, Matthew R. D. Owings, Alonzo H. Benn, and William E. Williams. Decree for complainant.

Offield, Towle, Graves & Offield and Edward W. Anderson (Charles K. Offield and Frederick I. Allen, of counsel), for complainant.

W. E. Williams, for defendants.

KOHLSAAT, Circuit Judge. This cause is now before the court on final hearing upon bill filed to restrain infringement of claims 1 and 2 of patent No. 502,378, granted to complainant's assignors August 1, 1893, for a machine for the preparation of cereals for food. Defendants insist that the bill limits infringement to claim 1. While clause 6 of the bill makes special reference to claim 1, claim 2 is sufficiently covered by other clauses of the bill. This contention is not observed either in the answer or the evidence, and seems to be limited to the argument. It is not justified by the record.

[1] The claims read as follows, viz.:

"1. In a machine for the preparation of cereals for food, the combination with a pair of compressing rolls, one of which is provided with circumferential grooves, of a comb-like scraper the teeth of which are arranged to fit said

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

grooves, the spaces between said teeth being arranged to fit the cylindrical faces of the divisions separating said grooves, substantially as specified.

"2. In a machine for the preparation of cereals for food, the combination of a pair of circumferentially grooved rolls, the comb-like scraper therefor, the conveyer belt, and the spindle II hung in slotted bearings, over said belt, substantially as specified."

It will be seen that claim 2 differs from claim 1, in that (1) both compresing rolls are grooved; (2) the addition of means for delivering the product to and for shaping by the belt and spindle.

Defendants contest the validity of the patent on the prior art, the proceedings in the Patent Office, and on the ground that the devices of the claims are mere aggregations. The last named may be quickly disposed of, as it is plainly seen from the patent that all of the elements operate to produce in claim 1 the unshaped cereal food product, and in claim 2 the finished commercial article.

The proceedings in the Patent Office show that on December 31, 1892, the examiner rejected claim 1 of the amended claims filed December 29, 1892, upon patents to Carew Nos. 423,593, granted March 18, 1890, for machine for applying adhesive material to the surface of paper, etc., and 475,535, granted May 24, 1892, for a like purpose, and patent No. 176,176 for a granulating machine granted to A. R. Guilder, April 18, 1876, and allowed amended claims 2 (the present claim 1), 3, and 5, filed December 29, 1892. A comparison of said amended claims 1 and 2 discloses no substantial difference between the two, other than the statements in amended claim 2 that the spaces between the teeth of the scraper are arranged to fit the cylindrical faces of the divisions separating said groove, and the substitution in claim 2 (present claim one) of one grooved and one smooth compression roll for the two-grooved rolls of claim 1.

The specification, lines 24 and 25, p. 1, says:

"B and B' are two rolls, one or both of which are to be grooved circumferentially."

The two grooved compression rolls are included in claim 2 as allowed. It can hardly be that invention could be predicated upon the belt and spindle elements of claim 2 in combination without other novel features. That claim ends with the words, "substantially as specified." The specification, lines 34 to 37, p. 1, says:

"D is a scraper having teeth so formed as to fit in the grooves in roll B and between the teeth the said scraper is to fit the cylindrical faces of the divisions separating said grooves."

Did not the patentee acquiesce in the conclusion of the Patent Office to the effect that the feature which differentiated his invention from the prior art lay in the adaptation of the scraper to both the grooves and the division spaces between the grooves? This seems a fair conclusion.

Complainant's expert, Wilson, says:

"I think that a scraper would not fall within the language of the patent in suit and claim 1 to which your question refers, unless such scraper had teeth arranged to fit in the grooves of the roller, and the spaces between the teeth arranged to fit the cylindrical faces or lands, the same constituting the divisions separating such grooves."

The defendants set up a number of patents of which patent No. 210,927, granted to E. Durand, December 17, 1878, for a machine for cutting or chopping tobacco leaf for manufacturing "picadura" and cigarettes, and the like, also the two Carew patents above described for a device for applying adhesive material to the surface of paper, the above set out Guilder patent for a granulating machine, patent No. 485,483, granted to A. Abojador, November 1, 1892, for a machine for reducing and comminuting tobacco for cigarettes and the like, patent No. 146,304, granted to J. Baumgartner, January 13, 1874, for a machine for making noodles, and patent No. 378,516, granted to P. A. Oliver, February 28, 1888, for a device for pressing and graining gunpowder, fairly represent the state of the prior art. None of these can be said to anticipate the two claims in suit. The very objects set out in the several patents disclose substantial differences between them and the patent in suit. As applied to the shredded wheat art, claims 1 and 2 seem to be impressed with some little degree of novelty, and are entitled to be ranked as invention. This, together with the presumptions growing out of the grant of the patent, justify the court in holding them to be valid.

"Defendants' rolls are assembled in a machine, two rolls in a pair, with five pairs mounted one above the other (defendant's record, p. 22), the grain entering the first set as grain and passing down through the five sets is delivered as finished shreds from the bottom." It is then taken by a carrier belt which delivers it to the hopper of a cupping machine from which it is fed into revolving cups shown in fig. 17 of patent No. 949,013, granted to W. E. Williams on February 15, 1910, having a cone-shaped central projection in its bottom around and over which the shreds are placed in an interlacing manner. Over this cone-shaped projection a plunger having a cavity corresponding to the cone is forced down upon the shredded product, forming it into a cup or other desired shape.

In complainant's device the prepared cereal is delivered to the compression rolls by which it is reduced to "threads, lace, or ribbons, or sheets, etc. (the form of which depending on the contact or proximity of rolls $B$ and $B'$)," and then removed by a scraper and received by a belt and carried to the spindle around which it is wound by the frictional action of the belt against the product. "If desired, the product may be conveyed without winding upon the spindle to any convenient receptacle."

Defendants' compressing rolls are provided of necessity with scrapers. Without these the rolls clog. According to defendant Williams' testimony, the defendants first used a scraper composed of a series of needles clamped into a box and held in such a manner that the needles entered the grooves. In August, 1907, they substituted (according to Williams) a flat piece of steel having V-shaped saw teeth which fitted into the groove registering with the bottom of the groove. These, the same witness (as well as complainant's witness Hutzen) claims, would become heated so that they were quickly abraded by contact with the grooves of the rolls to such an extent that they covered the spaces between the grooves, and become for all practical purposes the scraper of the patent in suit. Thereafter the witness says defendants used a

straight-bladed scraper, which, after 10 or 15 minutes' operation of the rolls, never fails to fit itself to the rolls sufficiently for commercial purposes. The witness insists that there is no advantage in scraping the faces of the division walls between the grooves, as removal of the dough from the grooves answers all purposes.

Complainant's witness Hutzen, who formerly worked for defendant corporation, denies that the straight-edge scraper blade scraped the shreds out of the rolls at the start. Complainant's expert Wilson corroborates Williams as to the wearing away of the straight edge by use so as to produce a scraper substantially like that of the patent in suit. In order to do this, the straight edge must be filed or otherwise produced to a beveled edge, so as to respond to the friction or grinding of the rolls. If the use of a scraper which fits the grooves of the rolls and at the same time acts upon and cleans the faces of the divisions between the grooves constitutes infringement of claim 1, then, manifestly, the use of any other scraper, which, by reason of its construction must, on frictional contact with the grooved roll, be reduced to an infringing device, would also be an infringement.

Complainant's expert, Wilson, says:

"Of course, if the bar upon which the teeth are formed was made thicker, the teeth would be more strongly supported at their bases, and such teeth would probably disengage the shreds from the grooves of the rolls, but such a scraping device would be dissimilar from defendant's exhibits to which you have called attention, because the spaces between the teeth would not engage the cylindrical faces of the rollers between the grooves."

It would probably be open to defendant to use these as well as the needle scraper first used by them.

It is evident that the question of infringement is a very close one, as is that of validity. However, considerable property interests have accrued to complainant based upon its operation under the patent in suit, and the court cannot say it has not been the result of the peculiar construction of its scraper. This feature of the patent is the basis of the patentable novelty of both claims in suit, so that both are infringed.

[2] With reference to defendants' motion to dismiss as to the individual defendant, it appears that the defendants' business, and particularly that which is complained of, has been conceived, built up, patented in part, and managed by the defendant Williams, who is also expert witness and counsel in this proceeding. He is properly made a defendant. As to the other individual defendants, the bill is dismissed. The injunction may go as to the use of the form of scraper as above intimated.